UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSA EMMA VILLEGAS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | No. 2:24-cv-0908 AC<br><br><br><br>**ORDER** |

Petitioner seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1] For the reasons that follow, plaintiff's motion for summary judgment will be GRANTED, and defendant's cross-motion for summary judgment will be DENIED.

## I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB on June 7, 2021. Administrative Record ("AR") 738, 866-872.[2] The disability onset date was alleged to be January 16, 2020. Id. The application was

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).

[2] The AR is electronically filed in readable format at ECF Nos. 19-11 and 19-12 (AR 1 to AR 2010).

1  disapproved initially and on reconsideration. AR 737-757, 759-781. On December 12, 2022,
2  ALJ Vincent A. Misenti presided over the hearing on plaintiff's challenge to the disapprovals.
3  AR 709-736 (transcript). Plaintiff, who appeared with her counsel Brian Mosish, was present at
4  the hearing. AR 711. Mary Jesko, a Vocational Expert ("VE"), also testified at the hearing. Id.
5      On May 1, 2023, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d)
6  of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d). AR 22-34 (decision), 35-39 (exhibit list). On
7  January 30, 2024, the Appeals Council denied plaintiff's request for review, leaving the ALJ's
8  decision as the final decision of the Commissioner of Social Security. AR 1-7 (decision and
9  additional exhibit list). Plaintiff filed this action on March 7, 2024. ECF No. 1; see 42 U.S.C.
10 § 405(g). The parties consented to the jurisdiction of the magistrate judge. ECF No. 16. The
11 parties' cross-motions for summary judgment, based upon the Administrative Record filed by the
12 Commissioner, have been fully briefed. ECF Nos. 25 (plaintiff's summary judgment motion), 29
13 (Commissioner's summary judgment motion).

## II. FACTUAL BACKGROUND

15      Plaintiff was born in 1974, and accordingly was, at age 47, a younger person under the
16 regulations when she filed her application.[3] AR 737. Plaintiff has a high school education. AR
17 715. Plaintiff has work history as a community manager in a mobile park office, as an
18 administrator in a tire business, self-employment as an interpreter, and yard duty at a school
19 general manager. AR 910. Plaintiff sustained an injury from a tree branch that fell on her in
20 April of 2021. AR 716.

## III. LEGAL STANDARDS

22      The Commissioner's decision that a claimant is not disabled will be upheld "if it is
23 supported by substantial evidence and if the Commissioner applied the correct legal standards."
24 Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the
25 Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews
26 v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).
27 ////

---

[3] See 20 C.F.R. § 404.1563(c) ("younger person").

2

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Commissioner, 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

////

////

IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI).  Plaintiff is "disabled" if he is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or

disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2025.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since January 16, 2020, the alleged onset date (20 CFR 404.1571 et seq.).
>
> 3. [Step 2] The claimant has the following severe impairments: degenerative disc disease of the lumbar spine and left shoulder soft tissue injury (20 CFR 404.1520(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)
>
> 5. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift and/or carry up to 20 pounds occasionally, 10 pounds frequently. She can sit, stand or walk for six hours each. She can occasionally reach overhead with the bilateral upper extremities. She can occasionally climb ramps and stairs but never climb ladders or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant cannot work at unprotected heights and must avoid concentrated exposure to moving mechanical parts.
>
> 6. [Step 4] The claimant is capable of performing past relevant work as a mobile home park manager, DOT #186.167-018; dispatcher, DOT #249.167-014 and interpreter, DOT #137.267-010. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from January 16, 2020, through the date of this decision (20 CFR 404.1520(f)).

AR 25-34.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d). AR 34.

////

## VI.  ANALYSIS

Plaintiff alleges that the ALJ erred in offering lay medical speculation regarding plaintiff's lower back, right upper extremity, and left knee impairments.  ECF No. 25 at 4.  Plaintiff requests that the matter be remanded to the Commissioner.  Id. at 10.  The substance of plaintiff's brief does not conform to plaintiff's statement of the ALJ's error.  Instead, it raises five points: (1) the ALJ erred at step two in finding plaintiff's right upper extremity impairment non-severe (id. at 4); (2) the ALJ erred in independently evaluating the MRIs of the lumbar spine (id. at 5); (3) the ALJ incorrectly concluded that plaintiff's conservative treatment for back pain was successful; (4) the ALJ inadequately reviewed the record regarding hip and knee weakness (id. at 8); and (5) evidence post-dating the ALJ decision but submitted on appeal undermines the ALJ's decision (id. at 8-9).  The court agrees with plaintiff regarding the last point only.

### A.  Step Two Upper Right Extremity Evaluation

Plaintiff contends that the ALJ erred in finding plaintiff's right elbow impairment non-severe.  ECF No. 25 at 4.  "The step-two inquiry is a de minimis screening device to dispose of groundless claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were considered.  Bowen v. Yuckert, 482 U.S. 137, 153 (1987).  At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'"  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-3p, 1996 SSR LEXIS 10 (1996)).  The step two severity determination is "merely a threshold determination of whether the claimant is able to perform his past work.  Thus, a finding that a claimant is severe at step two only raises a prima facie case of a disability."  Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

At step two, plaintiff has the burden of providing medical evidence of signs, symptoms, and laboratory findings that show that his or her impairments are severe and are expected to last

for a continuous period of twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005); see also 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). A finding that an impairment is not "severe" at step two is generally harmless if: (1) the ALJ finds that other impairments are severe, (2) step two is therefore resolved in plaintiff's favor, and (3) the limiting effects of the non-severe impairment are then considered throughout the remainder of the sequential evaluation. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless."); see also, Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) ("Here, the ALJ did not find that Burch's obesity was a 'severe' impairment ... Assuming without deciding that this omission constituted legal error, it could only have prejudiced Burch in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor.").

The ALJ addressed plaintiff's elbow condition at step two, finding that although she "was recently diagnosed with a right elbow condition, there is insufficient evidence to suggest that this condition will have more than a minimal impact on the ability to perform work-related activities for any consecutive 12-month period and it is therefore nonsevere." AR 26. To support this conclusion, the ALJ noted that examination notes from June of 2021 and August of 2022 recorded normal upper extremity strength and 5/5 grip strength, even with right elbow tenderness. Id. The AJL went on to note that a September 18, 2022 right elbow MRI showed biceps tendinosis with soft tissue edema and a partial tear of the exterior tendon, and a September 20, 2022 medical note stated plaintiff had normal strength in the upper extremities but a partial rupture of the right common extensor tendon and right distal bicep tendinopathy was noted. AR 26. Treatment included physical therapy, a Celebrex prescription, and an elbow strap. Id. The ALJ concluded plaintiff "retains normal strength of the right upper extremity." Id.

Plaintiff contends specifically that the ALJ erred at step two because he did not evaluate "[n]ew and material evidence submitted to the Appeals Council." ECF No. 25 at 4-5. Plaintiff also asserts that the ALJ was "incorrect" for finding that her right elbow impairment was non-severe, because the ALJ "utilize[ed] his own lay medical opinion to evaluate raw medical data"—

7

1  an MRI study—and "offered lay medical speculation that the impairments would improve." Id. at
2  4-5. Both of these arguments lack merit. Plaintiff's assertion that the ALJ improperly used his
3  own lay medical opinion to conclude from the MRI study that plaintiff's condition would
4  improve is belied by the actual decision, which contains no such assertion. AR 26. Instead, the
5  ALJ reviewed evidence showing that between June 2021 and September 2022, plaintiff had
6  unremarkable strength and other function findings (AR 26, 1051, 1920, 1924, 1929, 1936). This
7  was substantial evidence supporting the ALJ's finding that plaintiff's elbow condition did not
8  have more than a minimal impact on her ability to perform work-related activities for a
9  consecutive 12-month period. See 20 C.F.R. § 404.1522(a)
10      With respect to the evidence submitted to the Appeals Council, the court disagrees that the
11  ALJ erred. Plaintiff is correct that when the Appeals Council considers new evidence in deciding
12  whether to review a decision of the ALJ, that evidence becomes part of the administrative record,
13  which the district court must consider when reviewing the Commissioner's final decision for
14  substantial evidence. Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir.
15  2012). Plaintiff notes that the last dated record the ALJ had before him was dated September 20,
16  2022, in which primary care physician Nishant Patel, M.D., reviewed MRI results of plaintiff's
17  right upper extremity. ECF No. 25 at 4 (citing AR 1920-21). Plaintiff contends that records
18  submitted to the Appeals Council dated after September 20, 2022 "evidence that Villegas' right
19  upper impairment continued to significantly limit her ability to use her arm, that she continued to
20  need and wear the ling, and that the impairments lasted the requisite 12-months." ECF No. 25 at
21  5 (citing AR 95-96).
22      The records at the cited pages are from a clinic visit dated December 16, 2022. AR 95.
23  The "Injury Description" on this record reads "LtKneePain." Id. The assessment indicates elbow
24  pain, and recommends plaintiff continue physical therapy, noting that plaintiff "is doing well with
25  therapy thus far" and marks plaintiff's rehabilitation potential as "good." AR 96. Plaintiff's
26  argument is nonspecific as to how these records undermine the ALJ's determination at step two,
27  and the court finds that they do not obviously undermine that determination. The court rejects
28  plaintiff's argument on this point.

B. <u>Lumbar Spine Evaluation</u>

Plaintiff asserts that the ALJ "erred in evaluating the MRI of lumbar spine." ECF No. 25 at 5-6. Plaintiff's argument on this point lacks clarity, but the crux appears to be that the ALJ erred because he independently reviewed medical evidence when it involved "1) review of raw medical data such as complex imaging findings or laboratory testing results; 2) worsening of underlying impairments; or 3) development of novel impairments." <u>Id.</u> at 6. Plaintiff does not cite the ALJ's decision, but reviews portions of the medical evidence, stating that there are two MRIs of the lower spine, the second MRI (dated September 19, 2022) was not evaluated by a doctor of record, and the original MRI (dated July 21, 2021) was "essentially ignored or mischaracterized by the state agency doctors and the ALJ." <u>Id.</u> at 5.

The Ninth Circuit recognizes a presumption that ALJs are "capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." <u>Farlow v. Kijakazi</u>, 53 F.4th 485, 488 (9th Cir. 2022). The Ninth Circuit has, at least to some extent, allowed ALJs to refer to objective medical evidence when discounting statements from medical providers. See, e.g., <u>Woods v. Kijakazi</u>, 32 F.4th 785, 794 (9th Cir. 2022) (the Ninth Circuit did not find anything objectionable about an ALJ discrediting a medical provider opinion, in part, by referencing a "fairly benign" cervical spine MRI).

Here, as part of the ALJ's review of the objective medical evidence, the ALJ summarized the more recent findings of a lumbar spine MRI from September 18, 2022, and referenced imaging by stating that "tests that show her . . . lumbar spine is mildly abnormal." AR 31. However, it is clear from the ALJ's order that he did not rely solely on this MRI in determining the RFC: he referenced various objective clinical findings, plaintiff's inconsistent statements, and history of conservative treatment. <u>Id.</u> Accordingly, even if the court were to conclude that the ALJ erred in providing a lay medical opinion about the MRI, any error would be harmless because the ALJ gave multiple reasons for plaintiff's RFC with regard to the lumbar spine, and plaintiff does not explain how the ALJ's other rationales are undermined by any improper evaluation of the MRIs. The court finds no error.

C. Conservative Back Pain Treatment

Plaintiff contends she "has not been successfully treated with conservative treatment." ECF No. 25 at 7. To support this assertion, plaintiff states that her physicians "did not and do not consider her conservative treatment of medication, physical therapy and a TENS unit successful [*sic*.] Villegas report improvement with the TENS unit but still noted her pain range from 6-10 with an average of 7." Id. (citing AR 1710). Plaintiff also asserts that physical therapy treatments had not worked, and plaintiff was referred for pain management and epidural injections, but the ALJ indicated at the hearing that he was "not interested in hearing about the future treatment plan" for plaintiff. Id. (citing AR 96, 1920).

Upon review of the ALJ's decision and the evidence of record, the court finds that substantial evidence supported the ALJ's conclusion that conservative treatment, including chiropractic treatment, physical therapy, and prescription medication, and a TENS unit, was successful. AR 31 (citing AR 1710 (plaintiff reporting an average of level 7 pain but noting TENS unit is a "life saver" with providing pain relief and reporting compounding cream as needed with good results)), 1920, 1924, 1929, 1936 (no acute distress, normal gait and stance, no limitations when ambulating, instructed to use heat treatment and deep penetrating creams for low back pain)). The ALJ further explained that while plaintiff testified that she would fall and needed a walker and a cane and had trouble using the bathroom due to compression of her spinal column, chart notes indicated that she did not use an assistive device and had no limitations with ambulation. AR 31 (citing AR 1897, 1920, 1924, 1929, 1936).

Plaintiff's assertion that her "doctors did not and do not consider her conservative treatment . . . successful" is unsupported by any citations to the record in which her doctors state that her treatment was not successful. ECF No. 25 at 7. The physical therapy record plaintiff cites, AR 96, indicates that plaintiff had benefitted from physical therapy, would continue to benefit from it, and that even though she needed more physical therapy, she was "doing very well with [physical] therapy." AR 96. Even to the extent the cited records could potentially lead to different conclusions, the ALJ is the "final arbiter with respect to resolving ambiguities in the medical evidence" and the court cannot not reweigh the evidence where the ALJ's opinion is

10

substantially supported. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). The court finds no error.

D. Evaluation of Hip and Knee Weakness

Plaintiff briefly argues that the ALJ "isolated the record" with regard to plaintiff's lower extremity pain because he "cited to records that documented normal strength but failed to cite to records that conflicted with these findings or documented intermittent and fluctuating symptoms." ECF No. 25 at 8 (citing AR 1965 and 1973-1974). Plaintiff does not explain the citation to AR 1965 or 1973-1974. ECF No. 25 at 8. Instead, she goes on to state that "notes from August 25, 2023, document that Villegas still had pain and limited ability to stand and walk due to lower extremity pain, citing AR 103-104. The examination notes in the that record revealed an antalgic gait, medial heel whip, mid foot strike, and reduced quad activation in swing phase. AR 104. Objective testing revealed reduced strength and flexion and extension of the left knee and hip. AR 105." ECF No. 25 at 8.

The court reviewed plaintiff's citations to the record and the ALJ's opinion and statements to the record and concludes that the ALJ did not engage in prohibited "cherry-picking" of the medical evidence. Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014). The treatment notes cited by plaintiff are accurately referenced, but those same records also contain recommendations of the conservative treatment that the ALJ relied on in formulating the RFC. For example, in the assessment, the notes state plaintiff "will benefit from skilled Physical Therapy services for pain management, manual therapy, mobility, strengthening, patellar tracking activities, lifting/squatting mechanics education, gait training, and static/dynamic balance activities to improve quality of life and achieve her desired goals . . . Patient's prognosis is good due to high activity level, highly motivated and full understanding of therapy plan, guidelines and recommendations by PT." AR 105. Though the ALJ did not cite these particular records, they do not appear to undermine his analysis or the RFC. The court finds no error.

E. Evidence Post-Dating the ALJ Decision

Finally, plaintiff asserts that "New and material also submmted [*sic*.] to the Appeals Council is a positive EMG report that documents bilateral carpal tunnel syndrome in Villegas'

11

hands." ECF No. 25 at 9.  Plaintiff underwent nerve testing in September 2023, four months after the ALJ issued his decision, related to "hand numbness."  AR 43.  That nerve test indicated "[m]ild to moderate right and mild left carpal tunnel syndrome."  Id.  Plaintiff claims that this new evidence relates back to her testimony about "pain in her bilateral hands" at the administrative hearing (AR 723-24) and a complaint of "weakness and numbness in both hands" from May 2021 (AR 744).

At the hearing, plaintiff testified that she was unable to do household chores due in part to weakness in both her hands.  AR 723.  The conversation went as follows:

> Q [ALJ]: Before you mentioned you had problems with your elbows. So what's this got to do with your hands?
>
> A [Plaintiff]: Well, I don't have any strength on my right one and there's a lot of pain on my elbow 24/7. Then my left one has taken over, but it's feeling the same as my right now.
>
> Q: What's causing the hand pain, though?  I'm not clear on that one.
>
> A: Just the moment.
>
> Q: All right. What medical condition is causing that problem?
>
> A:  Oh. The the tree branch that fell on my head. It has to do with my -
>
> Q: All right.
>
> A: -- right.
>
> Q: So the -- what have you been diagnosed with with respect to the hands? Anything?
>
> A: Tear -- tear some tendons.
>
> Q: I don't show that in your hands, though. Are you talking about pain or symptoms that are radiating to your hands?
>
> A: Yes, I have pain. I always have pain into my low back, my hands.
>
> Q: Is that radiating pain from -- from your elbows?
>
> A Yes. It's the elbows. It's very painful to -- to bring up the spoon, coffee, milk, to eat, or even just to lay down. Any movement I do, it's very painful. Tear on tendons are very, very painful.
>
> Q: Tendons, you mean in your in your elbow? Elbows?
>
> A: Yes, yes. Very irritated all the time.

> Q: Because I don't see a separate hand impairment. It just that's what I'm trying to clarify. All right. …

AR 723-24. Plaintiff argues that the September 2023 carpal tunnel syndrome diagnosis relates back to plaintiff's complaints regarding her hands. The court agrees.

The new carpal tunnel diagnosis is part of the record this court must consider because it was presented to and reviewed by the Appeals Council. Brewes, 682 F.3d at 1163 (9th Cir. 2012) ("[W]e hold that when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."). Here, the carpal tunnel diagnoses and related medical evidence was accepted and reviewed by the Appeals Council in making its determination, and the court cannot conclude that these medical findings are unrelated to plaintiff's claims of hand pain and numbness, which were clearly presented to the ALJ. Id. at 1162 ("The Commissioner's regulations permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision."); Bruton v. Massanari, 268 F.3d 824, 827 (9th Cir. 2001) (explaining that new evidence is "material" under 42 U.S.C. § 405(g) if it " 'bear[s] directly and substantially on the matter in dispute,' and if there is a 'reasonabl[e] possibility that the new evidence would have changed the outcome of the ... determination'" (alterations in original) (quoting Booz v. Sec'y of Health & Human Servs., 734 F.2d 1378, 1380 (9th Cir. 1984))).

The ALJ's only discussion of hand pain in the RFC assessment is the cursory rejection of a medical opinion stating that plaintiff has weak hands and limited ability to finger and feel, in favor of a reference to examination findings of normal grip strength. AR 32. There is a very reasonable possibility that the new evidence, which does appear to relate back to plaintiff's earlier complaints of hand pain and numbness, could alter the ALJ's RFC determination, particularly with respect to limitations on fingering and feeling. Any such change to the RFC could alter a finding at step four. Accordingly, the undersigned finds that remand is appropriate such that the

ALJ can consider the evidence presented to the Appeals Council regarding plaintiff's hand impairments.

      F. <u>Remand</u>

      The undersigned agrees with plaintiff that new evidence submitted to the Appeals Council regarding her hand impairments necessitates remand. It is for the ALJ to determine in the first instance whether plaintiff has severe impairments and, ultimately, whether she is disabled under the Act. See <u>Marsh v. Colvin</u>, 792 F.3d 1170, 1173 (9th Cir. 2015) ("the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court"). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004). Here, new evidence will be presented to the ALJ that he did not previously have an opportunity to evaluate. Further development of the record consistent with this order is necessary, and remand for further proceedings is the appropriate remedy.

## VII. CONCLUSION

      For the reasons set forth above, IT IS HEREBY ORDERED that:

      1. Plaintiff's motion for summary judgment (ECF No. 25), is GRANTED;

      2. The Commissioner's cross-motion for summary judgment (ECF No. 29), is DENIED;

      3. This matter is REMANDED to the Commissioner for further consideration consistent with this order; and

      4. The Clerk of the Court shall enter judgment for the plaintiff and close this case.

DATED: March 6, 2025

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE